Thank you, Judge. As just mentioned, my name is David Ness. I'm with the Federal Defenders of Montana, and I represent the appellant, Denise Carlson. Ms. Carlson, as the Court is aware, was somewhat unusual, I guess, in that she is a female who was charged, ultimately convicted, and sentenced to over six years' imprisonment and lifetime supervised release for receipt of child pornography. The question in this case is whether or not the sentence imposed was reasonable. In looking back through the court record as well as the government's brief, I think that there are a few points that need to be made. First of all, shortly after Ms. Carlson was arrested, she arranged to have a psychosocial sexual evaluation done by a psychiatrist, and she also had a study done by Mr. Mike Sullivan, who is a social worker in Montana. They both determined that she suffers from various ailments, including obsessive-compulsive disorder, major depression, things of that nature. One of the things that I find troubling, I guess, in the court's statement of reasons and the court's reasons for imposing this particular sentence is that the court, without evidence, without any sort of psychological evidence, appears to have used that psychological evidence to justify the eight-year sentence and the lifetime period of supervised release. And the government does the same in their response brief. Dr. Stratford clearly testified that these emotional problems, mental health problems, she has a very good prognosis. I think he said 70 to 80 percent, particularly if she gets on some sort of medication or something of that nature. The government indicated in their argument with both the custodial portion of the sentence as well as the lifetime supervised release that that amount of time is needed in order to ensure that she gets adequate treatment. And, in fact, Dr. Stratford, I think, testified directly to the contrary, and the government had no evidence to put on, in effect, to contradict him. Well, there are cases approving both a sentence of almost exactly this length in very similar circumstances in Blinkensop and lifetime parole in Daniels. How much do these prior cases limit our ability to... Blinkensop, Your Honor, which was my case, so I'm fairly familiar with it. You know, when I was rereading that opinion, because actually it's on remand now, in upholding similar supervised release conditions... Well, that was five years. Blinkensop was the sentence, right, and Daniels was the lifetime supervision. Am I not right? Well, Blinkensop appealed both his custodial sentence as well as terms of supervised release, and the terms that were imposed upon him were very similar in a number of respects to those that were imposed upon Ms. Carlson, such as not going near schools and things of that nature. One, the court did reverse and remand the one condition prohibiting... But I meant to ask a very specific question. In Blinkensop, the imprisonment term was basically the same as here, right? Yes. And I'm asking whether the fact that we approved that imprisonment term in Blinkensop is basically precedent that binds us here. And in the same mode, in Daniels, we approved a lifetime, as opposed to a five-year, supervised release. Is that precedent that binds us here? I don't know, Your Honor. I would argue that they're not, primarily because what you're looking at both in district court as well as on appeal is individualized sentencing. So what would you say the differences are in each instance? Well, in Daniels, as I recall, one of the major things in Daniels was in the probation officer and the district court mentioned that there had been no risk assessment of Daniels. And so they didn't know exactly what Mr. Daniels' risk was, which is certainly different than here in this case where there was not just one but two risk assessments. And both Dr. Stratford and Mr. Sullivan both concluded that she posed a very, very low risk of any sort of actual hands-on contact with children. That was simply an unknown in Daniels. So that might justify a lifetime supervised release in Daniels. As for Blankensop, I guess Mr. Blankensop had been employed for a long time, just as Ms. Carlson had. It was his first offense. It was Ms. Carlson's first offense. In Blankensop, again, I don't think that there was a psychological profile done on Mr. Blankensop. So therefore, exactly how long or what he would need for treatment wasn't known. Here there was specific testimony from Dr. Stratford when asked, could she receive adequate treatment, custodial sort of treatment, within five years, and he said, oh, yes, well, within that time. There was no similar sort of testimony in Blankensop. And particularly with the lifetime supervised release, you know, when I looked at this, you know, she's been diagnosed as suffering from major depression, is compounded by isolation, and subsessive compulsive disorder, and apparently all this comes into some mix. And then when you look at these lifetime provisions of supervised release, quite frankly, I have a hard time imagining living under these conditions for life, that is not going near a school, having to contact your probation officer before you so much as socialize with someone who might have a child under the age of 18. I, you know, what does that mean if I can't socialize with people who have children under 18? Does that mean I can't go to a church function? Does that mean I can't talk to my neighbor? What exactly does that mean, assuming those people have children under 18 years old? More than that, even if we assume that the probation officers that are working now and the district court judges working now is reasonable, we have no idea how these things are going to be interpreted 20, 30 years from now, when all of us will probably be gone. And yet these conditions are – she's going to be saddled with these conditions, despite the fact that she is considered to have a low risk of hands-on type offending. What were these – well, first of all, on the socialize with children under 18, has that condition been approved in other cases of ours? To socialize with children under 18? With people with children under 18. I believe it may have been in Blenkinsop, I think, but again, that was five years. And also, what was the PSR recommendation here, the government recommendation? The government recommendation, they – the government indicated that, yes, they thought this was an unusual case. They thought that the recommended guideline sentence of close to eight years was maybe a little high. I think that was the extent of their recommendation. I don't recall the government making a recommendation as far as the length of supervised release. And the PSR? The PSR, we don't get the – I mean, the PSR sets out the penalties, but we don't get the actual recommendation. I see. If there's nothing further, thank you. Thank you. Good morning, Your Honors. My name is Mark Smith, Assistant U.S. Attorney. I'm here on behalf of the United States. It seems, Your Honors, that there are very few questions raised by this appeal that aren't answered by Blenkinsop. Well, except that Blenkinsop was five years of supervised release. That's the piece that I find strange, why this woman got lifetime supervised release. I mean, all the other conditions have to be evaluated in that light, and therefore the fact that the conditions were approved in Blenkinsop isn't terribly informative, given the difference between following them for five years and following them for life. The conditions of supervised release are definitely one component where this case diverges from Blenkinsop in terms of the ongoing threat that's posed by this particular defendant. Why is she – how would you explain, or did the judge explain, why she was more of an ongoing threat than the person in Blenkinsop? I think it's because of the very same factors that have been identified by the defendant. That is to say that she is a woman that is compelled to download child pornography. And despite the representations from the defense that, you know, she has been determined to be at a low risk of recidivism and is not going to be a threat to the community, I think we need to take a hard look at what exactly these experts said about Ms. Carlson in terms of whether she's treatable. On the psychosexual evaluation compiled by Mr. Sullivan at page 14, he says that even though Ms. Carlson has supposedly a low risk to re-offend, and even after her pharmacological and her other therapies, and even after she does her time in prison, which, again, we're assuming is going to be five years because that's the mandatory minimum, even after all of these things happen, Carlson should still have her Internet access restricted. Carlson should still be prevented from accessing any pornography. Carlson should still have no unsupervised contact with minors. And Carlson should be subjected to routine polygraph tests. I'm sorry, who said all this? Mr. Sullivan, who was the expert that was hired by the defendant, should be subjected to routine polygraph tests to assess her honesty and her behavior in the community. Now, that's just incompatible with the idea that she's going to be, you know, at no risk of recidivism and she's going to be no threat to the community after she goes. . . So defendants' own experts see her as an ongoing threat. The district court judge was not plainly erroneous, and this is a plain error standard review when we're talking about conditions of supervised release. Excuse me, what's that? When we're talking about conditions of supervised release, because defendant didn't raise it. . . It's not but the imposition of the lifetime period. The term. Abuse of discretion. That's correct. And even under that standard, which is less rigorous, given the recommendations from the defendant's experts, the district court was not abusing its discretion when it said, well, we need to have this woman under protections of supervised release for a couple of months. Did the defendant talk about the time period that the supervision was necessary? Did the sentence. . . Defendant's experts, I'm sorry. Defendant's experts. Mr. Sullivan did not limit it in any. . . I think basically he said these restrictions were indefinite. He didn't say that this would only be necessary for a static time period. He just said these are things that are going to have to be in place in the community. What about this socialize with people with children under 18? Was that approved in Blenkinsop? It doesn't seem to me that it was. I don't recall seeing it in Blenkinsop, Your Honor. Do you know any case that's approved that? I do not. However, to me, I believe it's. . . It is. . . It hangs together with the restriction against going to places where minors congregate. Well, not really because people don't. . . It doesn't say when the kids are there. It says if they have kids. The danger, I think, Your Honor, is that you're going to have a scenario, and this is how the condition of supervised release reasonably relates to the goals of supervised release. If you have her socializing with somebody that has minor children, obviously there's going to be a greater opportunity for her to come into contact with those people. The parole officer is the best arbiter to gauge her recovery, her progress. And if she feels like she's being unduly burdened by that condition when she's released from prison, she can go to the district court and seek to have that condition vacated. There's authority suggesting that unless and until, because you have district court review available for these terms and conditions, you just can't get to the level of plain error review because you can't have substantial rights affected. Was there any real risk of this so-called hands-on? What you say sounds like there's a risk that she might once again look at or receive child pornography. But is there anything that suggests that it goes beyond that? That she will. To hands-on interference with children? She has none of it in her background so far. Again, I would refer you to the experts' reports that were compiled by the defendant's experts, and I believe it was actually the psychiatrist who said in this case that there are studies out there indicating that possession of child pornography is sort of a gateway, that there are empirical studies demonstrating that this is a progression. It is debated, but there are data out there that support that notion, and there are studies that support it. There must be an awful lot more people who view or possess child pornography than there are that molest children. I mean, it's not an inevitable gateway, is it? I'm not prepared to say that it's an inevitable gateway, but the experts have said that in several cases it's an indicator that you're going to have that kind of conduct down the road. So that's an area of concern, and I think it's an area of concern that the district court was clearly mindful of when it was fashioning these conditions. What we have here really is a law that was imposed to kill a market on the same theory that you're forbidden to trade in leopard skins or something like that. The viewing of child pornography in itself doesn't hurt anybody, but it certainly hurts when that stuff is produced, and you create a market for it. What we're trying to do with the criminal justice system, I believe, what Congress is trying to do is kill the market. But is there any difference in deterrence between a five-year sentence and an eight-year sentence, or even a three-year sentence or a two-year sentence? Well, I guess my first area of disagreement with the court would be that merely possessing child pornography is a victimless crime. You know, there's decades of Supreme Court precedent indicating that that's not, in fact, the case, and they're a victim with these statements. I don't think that's what Judge Canby said. What he said was that the victim is the person as to whom this pornography was made, and the reason that you're dealing with the person who's looking at it is to kill the market. It's not that there is to victim. It's that it's not, there's no one-on-one correlation or even an obvious correlation between looking at the material and being the person who actually hurts, who physically hurts children. And I apologize if I misspoke. I didn't mean to characterize Judge Canby's question in that fashion. I agree. The market is the problem, is definitely the locus of the problem. You know, the impact on the witnesses is undeniable. The impact on the child victims is undeniable here, and we have victim witness statements in this case. How old is Ms. Carlson? Do we know that? Forty-six years old as of the time of the pre-sentence report. Is it of any relevance in the 46 years she hasn't done anything to abuse a child? I mean, as opposed to somebody who's a lot younger in terms of the Skateway notion? I believe that that, you know, the relevance of her age was taken into consideration by the district court in formulating the terms of her sentence, yes. How many, the one anomaly that strikes me here is the lifetime supervised release as compared to Blankensop. It's just hard for me to understand why that would be. Well, let's think of it this way, Your Honor. Given her age, given her record, given her other attributes, given the expert testimony, it's... In Blankensop, you had the same district court judge. I know that. That's why it's hard for me to understand. You had the same dialogue, basically, that he used at sentencing, more or less, between him and the defendant. You had the same charge, received a child pornography, and you had similar aggravating factors. You had a high number of images. But in Blankensop, he had 42 videos and 99 still photographs. In this case, over a period of 10 years, Ms. Carlson accumulated 139 videos of sadism and masochism to prepubescent kids. That's three times as many videotapes as Mr. Blankensop. She did this over a 10-year period. There is a demonstrated pattern, a disturbing pattern, of her conduct that is ingrained, and that is going to continue. And that is why the court extended her period of supervised release conditions, in this case, far longer than in Blankensop. I see that my time has expired. Thank you very much. Thank you. If I could make a couple of points, just very briefly. First, while Dr. Sullivan, I think it was, did recommend that Ms. Carlson not have unsupervised access to children, undergo routine polygraph tests, there's no indication that he intended those recommendations to continue for the rest of her life. Furthermore, I would also submit that unsupervised access to children is far different and less onerous than the restrictions that were placed upon her by the district court, which, as I stated in my brief, really will contribute both to her isolation and inability to reintegrate into the community. The second point is the government talks about the number of videos. And, you know, I make this point in my brief, but these things on these file-sharing programs are downloaded oftentimes without a defendant even knowing it. And sadism and masochism, I don't know if this necessarily helps a lot, but it is defined under the sentencing guidelines as any sort of penetration. It's not necessarily a stereotypical sort of torture. Is Blankensop similar with regard to, did Blankensop not engage in any distribution either, as she did? He did not, yes. Daniels, do we know about Daniels? Daniels, yes. Did he have any distribution activity? He was convicted of receipt. I believe there may have been some indication that he was involved in a group of people and they kind of shared, if I recall. There's no further, I don't know if I have extra time or not. Okay, thank you very much. Thank you both for a useful argument. The case of United States v. Carlson is submitted.
judges: Canby, Thompson, Berzon